FINKEL et al. v. KOHN et al.

(Supreme Court, Appellate Division, First Department. March 10, 1899.)

1. SPECIFIC PERFORMANCE—MORTGAGES—REDEMPTION—CONTRACTS.

A decree foreclosing a second mortgage held by a corporation having been rendered, it was agreed between K., the vice president of the corporation (apparently individually), and F., a person procured by the mortgagor, that K. should purchase at the foreclosure sale, and hold the premises till a certain date, on or before which F. might redeem by

paying to K. "whatever sum of money he may have paid on or for said property," with interest; "it being understood that K. [was] to be paid sufficient so that no loss whatever [should] inure to him * * * by reason of such purchase; this to include all charges he may have paid for legal services, rendered or to be rendered, interest on first mortgage, costs of [an] action [then] pending to foreclose the same, and any charge for extension of said mortgage." F. then gave K. a note, whose proceeds were to be credited on the amount due, in case of redemption. If F. should not redeem, it was to be held as liquidated damages. A more formal contract embodying the agreement was to be afterwards executed. The property was bid in by K., subject to the first mortgage, for an amount less than that due on the second mortgage. F. sought to compel a conveyance on payment of the amount of the bid, together with expenses, without paying the balance due on the second mortgage. *Held,* that a conveyance on such terms would not be enforced, as it would violate the real object of the parties, and produce a result not contemplated when the agreement was made.

2. CANCELLATION OF INSTRUMENTS—PROMISSORY NOTES.

Where specific performance of a contract involving a past-due note of plaintiff was denied, and plaintiff was left to his remedy at law, the court would not require defendant to deliver up the note or cancel it, in the absence of allegations that he had sought to enforce it, or that there was not an ample defense at law.

Appeal from judgment on report of referee.

Action by Abraham Charles Finkel and another against Arnold Kohn and another. From a judgment dismissing the complaint, entered on the report of a referee, plaintiffs appeal. Affirmed.

The pleadings are as follows, omitting formal parts, viz.:

The plaintiffs complain and allege: First. That on or about the 18th day of July, 1895, an agreement was executed and delivered by and between plaintiffs and the defendant Arnold Kohn, above named, a copy of which agreement is hereto annexed, as a part of this complaint. Second. That pursuant to said agreement, and simultaneously therewith, the plaintiffs delivered to said defendant Arnold Kohn their promissory note for $500, payable on November 18, 1895, with the understanding, as specified in said agreement, that, in default of the plaintiffs to comply with said agreement on their part, the proceeds of said note were to be liquidated damages of said defendant for such default, and, in case of compliance with said agreement, were to be credited on account of the purchase price of the property mentioned in said agreement, and said defendant or his assigns now hold the said note. Third. That the said defendant bid in the said property mentioned in said agreement, at the foreclosure sale therein referred to, on the 19th day of July, 1895, for the sum of $250, subject to a first mortgage of $10,000 then on said property, and on the 7th day of August, 1895, the said property was conveyed to said defendant Arnold Kohn by John Delahunty, referee, on the payment of said bid. Fourth. That the charges paid by said defendant for legal services, interest on said first mortgage, costs of action to foreclose the same and to obtain an extension of said first mortgage, are about $2,903.11, $2,000 of which were paid in reduction of said first mortgage, which is now only $8,000. Fifth. That the plaintiffs have demanded of the said defendant the execution and delivery of a contract to carry out the provisions of said agreement as therein specified, but said defendant refuses to execute and deliver the same. Sixth. That plaintiffs are ready to pay to said defendant any sum legally paid by said defendant, in accordance with said agreement, to acquire title to said property, and legally chargeable as the purchase price thereof under said agreement, but said defendant refuses to comply with said agreement. Seventh. That, after the execution and delivery of said deed to said defendant Arnold Kohn, said defendant conveyed the said property mentioned in said agreement to the defendant (a domestic corporation) the State Bank, who is now in possession; as plaintiffs are in-

formed and verily believe, that the said defendant the State Bank had full notice of said agreement at and before the execution and delivery of said deed. Eighth. That said premises, No. 236 Madison street, mentioned in said agreement, are described in said deed to said defendant above mentioned as follows: All that certain dwelling house and lot of ground situate, lying, and being in the Seventh ward of the city of New York, in the county and state of New York, on the southerly side of Madison street, bounded northerly by Madison street, southerly by ground now or late of Samuel Demilt, easterly by land now or late of John Clapp, and westerly by house and lot now or late of Benjamin Clark, containing in width in front and rear twenty (20) feet, and in depth on each side ninety (90) feet, including and to include one equal half part of the walls on each side of said house, which are to be and remain party walls between said house and the adjoining ·houses; and which said premises are also more particularly described as follows: Commencing at a point on the southerly side of Madison street, distant one hundred and five feet and eight inches easterly from the southerly corner of Jefferson and Madison streets; thence running easterly along said southerly side of Madison street twenty feet; thence southerly and parallel with Jefferson street, and part of the way through a party wall, ninety feet; thence westerly and parallel with Madison street twenty feet; thence northerly, and again parallel with Jefferson street, and a part of the way through a party wall, ninety feet, to Madison street, at the point or place of beginning. Wherefore plaintiffs demand judgment against the defendants, that said defendants be required to perform said agreement, and to render to the plaintiffs an account of all charges paid by the defendant Arnold Kohn for legal services, interest on first mortgage, costs of foreclosure and charges for extension of said mortgage, and any other sum legally paid to acquire title to said property, in accordance with the provisions of said agreement, and that the amount legally chargeable to the plaintiffs under said agreement for the purchase price of said property be decreed by this court, and that upon the payment of the amount so decreed, less the proceeds of said note, the defendants be required to execute and deliver to plaintiffs a good and sufficient deed to the said premises, subject to said first mortgage, and for such other and further relief as may be just.

Memorandum of agreement to be made between Arnold Kohn and R. Finkel & Son as to premises No. 236 Madison street, in the city of New York, which are to be purchased by Arnold Kohn at the foreclosure sale thereof to be held on July 19th, 1895: He not to be required to bid more than $3,000 over the first mortgage, interest, &c., and held by him or his assigns until the 18th day of November, 1895. If on that day, or any time prior thereto, the said R. Finkel & Son or his assigns choose to redeem said property by paying to Arnold Kohn or his assigns whatever sum of money he may have paid on or for said property, with interest up to date of such redemption, the said Arnold Kohn or his assigns is to convey said property to said R. Finkel & Son or his assigns; it being understood that said Arnold Kohn is to be paid sufficient so that no loss whatever will inure to him or his assigns by reason of such purchase; this to include all charges he may have paid for legal services, rendered or to be rendered, interest on first mortgage, costs of action now pending to foreclose the same, and any charge for extension of said mortgage. A note made by R. Finkel & Son, dated July 18th, 1895, to their own order, and indorsed by them to Bernard Petchaft, and by Bernard Petchaft indorsed to said Arnold Kohn, is this day given to said Arnold Kohn; and, if said property be redeemed, the proceeds of said note is to be credited on the amount due in order to redeem the same. If default is made in such redemption, the said note or its proceeds is to be held as liquidated damages. A further contract to carry out all the above is to be made after the purchase of said premises by said Arnold Kohn, and said contract is to contain a clause that time is the essence of the contract, and to be drawn, immediately after said purchase, at the office of Messrs. Julius J. & A. Lyons, 140 Nassau Street, New York City.

Dated July 18th, 1895.　　　　　　R. Finkel & Son, by Abm. Ch. Finkel.
　　　　　　　　　　　　　　　　　Arnold Kohn.

In the presence of ———.

On first page, line 7, the words, "he not to be required to bid more than $3,000 over the first mortgage, interest, etc.," interlined before execution. And on second page, line 19, the word "drawn," interlined before execution.

Alf. Lyons.

The defendant Arnold Kohn, by his amended answer, answering the complaint of the plaintiffs herein, through Julius J. & A. Lyons, his attorneys, shows, for a first and separate defense: First. He admits the allegations contained in the first and second paragraphs of the plaintiffs' complaint. Second. He admits that he did on or about July 19, 1895, bid in the property described in the plaintiffs' complaint, for the sum of $250, and that after payment of said amount said premises were conveyed to him; but he alleges that the agreement mentioned in the first paragraph of plaintiffs' complaint, a copy of which is annexed thereto, and the bid made for said premises by him, were both made by him on and in behalf of the defendant the State Bank, and not in his individual or personal interest,—he being at said time and now the vice president of said bank,—and the note mentioned in the agreement, a copy of which is annexed to plaintiffs' complaint, was also taken by him for and on account of the defendant the State Bank. Third. He admits that the title to said premises was taken in his name, and the items referred to in the third paragraph of plaintiffs' complaint. together with other sums, were paid on account of the premises described in said complaint. Fourth. He alleges that he has heretofore duly conveyed the premises described in the complaint herein to the defendant the State Bank, and has assigned and transferred the note mentioned in the aforesaid agreement. Fifth. He denies that the plaintiffs have demanded of him the execution and delivery of a contract to carry out the provisions of the agreement, a copy of which is annexed to plaintiffs' complaint. Sixth. He denies, on information and belief, that the plaintiffs are ready to pay him or the defendant the State Bank the sum it (said State Bank) is legally entitled to, in accordance with the terms and provisions of said agreement, and with which the plaintiffs are properly chargeable, as the purchase price of the premises aforesaid, in order to obtain conveyance and redemption of the same. Seventh. He admits that he conveyed the premises described in the complaint herein to the defendant the State Bank, and that said defendant is a domestic corporation, and is now in possession of said premises, and that it had full knowledge of the agreement above referred to, for the reason that it was made by him in its behalf, and he has assigned whatever technical or formal right, title, or interest he might have had in and under said agreement, by reason of its being taken in his name, to the defendant the State Bank, together with the promissory note for $500 therein set forth. Eighth. He admits the allegations contained in the eighth paragraph of plaintiffs' complaint.

The defendant Arnold Kohn, further answering the complaint of the above-named plaintiffs, and by way of counterclaim, shows: First. That at the time of the making of the agreement, a copy of which is annexed to plaintiffs' complaint, it was fully and entirely understood and agreed by and between said plaintiffs and this defendant, individually and representing the defendant the State Bank as its vice president, that the written agreement was to provide that said plaintiffs were to have the right and privilege to purchase and redeem the premises described in the complaint herein from the defendant Arnold Kohn, or his legal representatives or assigns, on or before the 18th day of November, 1895, and not after said day, for a sum which would on the day that said redemption or purchase took place make the defendant the State Bank entirely whole, and not suffer any loss or damage by reason of said sale; that is to say, that the plaintiffs were to pay to the said State Bank the sum found due it in a certain action brought by it in the supreme court in the state of New York, in which it was plaintiff and Annie and Bernard Petchaft were defendants, to foreclose a mortgage held by it on said premises, together with interest thereon, together with all costs, allowances, and disbursements in said judgment mentioned, and all charges for referee's fees and disbursements, and also for all legal services rendered or to be rendered, and accrued interest on the first mortgage on the premises, and any sum paid on account of the principal thereof, and costs and allowances and disbursements of a certain action then pending

to foreclose said first mortgage, and any sum paid for obtaining extension for the payment of the principal of first mortgage, all taxes, assessments, Croton water charges, with interest on all the above items. Second. That if said agreement, a copy of which is annexed to plaintiffs' complaint herein, does not, for any reason, fully provide for a contract of purchase or redemption in conformity with the above, it was an error and mistake of both parties thereto; for such was fully the intention, and fully understood, that that said contract should so provide, and it was so agreed to by the plaintiffs and the defendant Arnold Kohn, both in his individual and representative capacity, as vice president of the defendant the State Bank; and that it did not so provide is a mutual mistake. Wherefore the defendant the State Bank demands judgment (1) that the complaint in this action be dismissed; (2) that the contract entered into with the plaintiffs and defendant Arnold Kohn, a copy of which is annexed to plaintiffs' complaint, be reformed so as to contain and conform with the true and original agreement and intention of the parties thereto, as fully set forth in the first paragraph of the counterclaim herein; (3) that the defendant Arnold Kohn have his costs and disbursements of this action; (4) that the defendant Arnold Kohn have such other and further relief in the premises as to the court may seem just and proper.

The defendant the State Bank, by its amended answer, answering the complaint of the above-named plaintiffs. through Julius J. & A. Lyons, its attorneys, and for a first and separate defense, shows: First. It admits the allegations contained in the first and second paragraphs of plaintiffs' complaint. Second. It admits that the defendant Arnold Kohn did on July 19, 1895, bid on the property mentioned in the agreement referred to in the first paragraph of plaintiffs' complaint, and duly described therein, for the sum of $250, and that thereafter, on payment of said amount, the said premises were conveyed to him. Third. It admits that it has, since the title to said premises was taken in the name of Arnold Kohn, paid, for legal services. interest on the first mortgage, costs of the pending action to foreclose said first mortgage, and fees on obtaining an extension of said first mortgage, and on account of principal of said first mortgage, the sum of $2,702.19: and it alleges that said sum is not the entire amount that it has, since the time above mentioned, paid for or on account of said premises. Fourth. It denies that plaintiffs have demanded of it the execution and delivery of a contract to carry out the provisions of the agreement, a copy of which is annexed to the plaintiffs' complaint; and it denies that, prior to the bringing of this action, it refused to execute and deliver the same; and it denies that it has ever refused, or that it now refuses, to execute and deliver the same. Fifth. That in pursuance of the provisions of the agreement, a copy of which is annexed to plaintiffs' complaint, the defendant the State Bank duly tendered to said plaintiffs a contract. in conformity with the terms of the agreement, duly executed and acknowledged by it, and demanded of said plaintiffs that they sign and execute the same in conformity with the provisions of said agreement. but said plaintiffs have refused and failed to do so. Sixth. That the defendant the State Bank has been, and is now. ready and willing to perform its contract with the above-named plaintiffs in accordance with the true intent and meaning thereof, a copy of which contract is annexed to the plaintiffs' complaint. Seventh. It denies that the plaintiffs are ready to pay to it, or have ever offered to pay to it, the sum to which it is legally entitled in accordance with the terms and provisions of the agreement annexed to the plaintiffs' complaint herein, and which they (said plaintiffs) are properly chargeable with, as the purchase price for said premises, in pursuance with said agreement. Eighth. It admits that the defendant Arnold Kohn conveyed to it the property mentioned in said agreement, and fully described in plaintiffs' complaint, and that it is a domestic corporation, and that it is now in possession of said premises, and that it had full notice of the agreement mentioned in the first paragraph of plaintiffs' complaint, a copy of which is thereto annexed, before the execution and delivery of said deed of conveyance of said premises to it; and it alleges that the defendant Arnold Kohn heretofore did assign whatever right, title, and interest he had in and under said agreement, a copy of which was

annexed to plaintiffs' complaint, to the defendant the State Bank, together with the promissory note of $500 therein mentioned. Ninth. It admits the allegations contained in the eighth paragraph of plaintiffs' complaint.

The defendant the State Bank, further answering said complaint of the above-named plaintiffs, and by way of counterclaim, shows: First. That heretofore, and on or about the 2d day of May, 1893, one Annie Petchaft, being the owner and in actual possession of premises 236 Madison street, in the city of New York (the premises described in the plaintiffs' complaint herein) made and delivered to the defendant the State Bank a certain mortgage thereon, to secure the payment of certain promissory notes made or indorsed by her, and discounted for her by the defendant the State Bank; said mortgage being recorded in the office of the register of the city and county of New York, in Liber 15, p. 240, of Mortgages (section 1). Second. That thereafter, and on or about the 10th day of November, 1893, the said defendant the State Bank, having and holding certain promissory notes either made or indorsed by said Annie Petchaft, which were then due and unpaid, proceeded, in an action in the supreme court of this state, to foreclose said mortgage, and have the said premises therein described sold, and out of the proceeds of such sale, if the same were sufficient, to pay to itself the amount of the indebtedness of said Annie Petchaft to it, together with accrued interest therein, and the costs and disbursements of said action. Third. That said action was duly proceeded with, and resulted in a judgment of foreclosure and sale of said premises, which judgment is dated the 22d day of November, 1894, and Mr. John Delahunty was by said judgment appointed referee for the purpose of conducting the sale therein described; and the sum of $2,073.32 was found to be due to the plaintiff in said action, and directed to be paid to it, together with $301.49 costs and allowance, making in all the sum of $2,374.81. Fourth. That thereafter a copy of said judgment was placed in the hands of said referee, Mr. John Delahunty, and he was directed to proceed with the sale of said premises in accordance with the provisions of said decree, and the sale thereof was set for July 19, 1894, at the New York Real-Estate Salesroom, No. 111 Broadway, in the city of New York, and notice of said sale duly published in manner provided by law, and given to the defendants in said action. Fifth. That on the 18th day of July, 1894, Bernard Petchaft, a defendant in said foreclosure action, and husband of Annie Petchaft, the owner of the equity of redemption in said premises, applied to the defendant Arnold Kohn, herein, who was at that time, and is now, vice president of the defendant the State Bank, to have said bank enter into a contract with the plaintiffs (one of which plaintiffs, to wit, Abraham Charles Finkel, was about to become his son-in-law) by which the property was to be purchased by said bank at a price not exceeding $3,000 over and above all incumbrances and liens, together with accrued interest thereon, and was to be held by said State Bank until November 18, 1895, and with privilege to the said plaintiffs on or before that day to redeem said property and receive a conveyance thereof, on paying to the defendant the State Bank the full amount which said premises had on said day of redemption cost said State Bank, the amount due it under the indebtedness of Annie Petchaft above referred to, and provided for in the decree of foreclosure above referred to, to be a portion of such costs; in other words, that said State Bank was to be paid and receive a sum sufficient to hold it free and harmless from all loss and damage of every kind and nature whatsoever by reason of the said indebtedness of said Annie Petchaft, and any other amount paid by it up to said 18th day of November, 1895. Sixth. That said Arnold Kohn, Bernard Petchaft, and Abraham Charles Finkel, one of the plaintiffs herein, did on the 18th day of July, 1895, meet at the office of Messrs. Julius J. & A. Lyons, attorneys for the defendant the State Bank, and it was then and there agreed between the parties hereto that, in the event of said premises being purchased by the State Bank aforesaid, the same should be bid in by the defendant herein, Arnold Kohn; it being then and there fully mentioned and understood that said Arnold Kohn was acting entirely for the defendant the State Bank, and not in his individual capacity, and not for his individual benefit, but that after the purchase of said property by him he was to convey said property to the defendant the

State Bank, and assign all his interest in said contract, and the note therein mentioned and provided for, and then given, and that the defendant the State Bank was the real party in interest, and that no redemption of said property was to be had, unless said State Bank was made entirely whole and harmless from all and any loss or damage whatsoever. Seventh. That thereafter, on the 19th day of July, 1895, said premises were set up at public auction, in pursuance of said judgment of foreclosure and sale, at the New York Real-Estate Salesroom, 111 Broadway, in the city of New York, under the direction of Mr. John Delahunty, referee, and the same were purchased by Arnold Kohn, who bid therefor the sum of $250 over and above all mortgages and accrued interest, taxes, assessments, and liens thereon, together with the costs of a certain action then pending to foreclose the first mortgage thereon; and thereafter said referee duly conveyed said property to said Arnold Kohn, by deed dated August 2, 1895, which deed is recorded in the office of the register of the city and county of New York, in Liber 31, p. 177 (section 1 of Cons.); and thereafter said Arnold Kohn duly conveyed said premises to the said State Bank, by deed dated September 14, 1895, and recorded in said register's office, in Liber 31, p. 396 (section 1 of Cons.), and duly assigned and transferred the $500 note mentioned in the agreement annexed to the plaintiffs' complaint herein to the defendant the State Bank aforesaid, and the said State Bank is now in actual possession of said premises, and is the owner and holder of said note above mentioned. Eighth. That thereafter the referee, Mr. John Delahunty, made his report of sale, and duly filed same with the clerk of the supreme court (the court in which said foreclosure action was brought and pending); and by said report he found that the plaintiff in said action, the said State Bank, was entitled to a judgment for deficiency against Annie Petchaft for the sum of $2,690.05, with interest from the date of said report; said report being dated August 2, 1895. Said deficiency judgment was thereafter duly docketed in the office of the clerk of the city and county of New York against Annie Petchaft, and has not been paid to the defendant the State Bank, or any one for its account. Ninth. That at the time of the making of the agreement, a copy of which is annexed to plaintiffs' complaint, it was fully and entirely understood and agreed by and between said plaintiffs and the defendant Arnold Kohn, individually and representing defendant the State Bank as its vice president, that the written agreement was to provide that said plaintiffs were to have the right and privilege to purchase and redeem the premises described in the complaint herein from the defendant Arnold Kohn, or his legal representatives or assigns, on or before the 18th day of November, 1895, and not after said day, for a sum which would, on the day that said redemption or purchase took place, make the defendant the State Bank entirely whole, and not suffer any loss or damage by reason of said sale; that is to say, that the plaintiffs were to pay to the said State Bank the sum found due it in a certain action brought by it in the supreme court in the state of New York, in which it was plaintiff and Annie and Bernard Petchaft were defendants, to foreclose a mortgage held by it on said premises, together with interest thereon, together with all costs, allowances, and disbursements in said judgment mentioned, and all charges for referee's fees and disbursements, and also for all legal services rendered or to be rendered, and accrued interest on the first mortgage on the premises, and any sum paid on account of the principal thereof, and costs and allowances and disbursements of a certain action then pending to foreclose said first mortgage, and any sum paid for obtaining extension for the payment of the principal of first mortgage, all taxes, assessments, Croton water charges, with interest on all the above items, which said sums amount in the aggregate to the sum of $6,096.31, with interest. Tenth. That if said agreement, a copy of which is annexed to plaintiffs' complaint, does not, for any reason, fully provide for a contract of purchase or redemption in conformity with the above, it was an error and mistake of both parties thereto; for such was fully the intention and fully understood,—that said contract should so provide,—and it was so agreed to by the plaintiffs and the defendant Arnold Kohn, both in his individual and representative capacity, as vice president of the defendant the State Bank, and that it did not so provide is a mutual mistake. Wherefore the defendant the State Bank demands judg-

ment (1) that the complaint in this action be dismissed; (2) that the contract entered into with the plaintiffs and defendant Arnold Kohn, a copy of which is annexed to plaintiffs' complaint, be reformed so as to contain and conform with the true and original agreement and intention of the parties thereto, as fully set forth in the ninth paragraph of the counterclaim herein; (3) that the defendant the State Bank have its costs and disbursements of this action; (4) that the defendant the State Bank have such other and further relief in the premises as to the court may seem just and proper.

The plaintiffs, replying to the counterclaim set forth in the amended answer of the defendants, deny each and every allegation thereof, except in respect to the allegations thereof contained in the amended answer of the defendant the State Bank entitled first, second, third, fourth, and eighth paragraphs, as to which the plaintiffs deny any knowledge, or information sufficient to form a belief; and except, also, that they admit that a conveyance was made by said Arnold Kohn to the State Bank. Wherefore plaintiffs demand judgment as in the complaint demanded.

The note mentioned in the complaint is as follows, to wit:

$500.               New York, July 18th, 1895.

Four months after date, we promise to pay to the order of ourselves five hundred dollars, at our place, 62 Essex street, City. Value received.

                R. Finkel & Son.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Simon Sultan, for appellants.

Benjamin N. Cardozo, for respondents.

INGRAHAM, J. The action was brought to compel the defendants to convey to the plaintiffs a piece of property in the city of New York upon payment of the amount that the defendant Arnold Kohn had paid for said property, with the costs and expenses incurred in its purchase. A copy of the agreement is annexed to the complaint. The answer admits the execution of the agreement, alleges that the plaintiffs failed to comply with their agreement, by refusing to pay the amount due thereunder, and, as a counterclaim, alleges that the agreement as insisted upon by the plaintiffs did not correctly express the understanding between the parties, and asks that the agreement be reformed. The referee refused to reform the contract, upon the ground that it was not satisfactorily proved that the plaintiffs clearly understood the agreement they were executing, or that the minds of the parties ever really met upon any definite understanding, but decided that it was not equitable to decree specific performance, and therefore dismissed the complaint, leaving the plaintiffs to their remedy at law.

The situation existing at the time this agreement was executed was as follows: One Annie Petchaft was the owner of the premises described in the complaint, which were subject to a mortgage of $10,-000, and a second mortgage to secure the payment of certain notes aggregating the sum of $2,073.32, which was held by the defendant the State Bank, of which institution the defendant Kohn was the vice president. This second mortgage had been foreclosed, and a judgment had been entered, under which the property was to be sold on the 19th day of July, 1894. The defendant Kohn had no interest in this property, and no interest in the mortgage, except as an

officer of the State Bank. On July 18th (the day before the sale) the plaintiff Abraham C. Finkel, Bernard Petchaft, the husband of Annie Petchaft, the owner of the property in question, and the defendant Kohn met at the office of the attorney of the State Bank, who was foreclosing the mortgage, when this agreement which the action is brought to enforce was executed. The agreement, in form, is between the defendant Arnold Kohn and R. Finkel & Son, a co-partnership composed of the plaintiffs. By this agreement the premises No. 236 Madison street were to be purchased by the defendant Kohn at the foreclosure sale thereof to be held on the 19th day of July, 1895,— Kohn not to be required to bid more than $3,000 over the first mortgage and interest; and it was to be held by him or his assigns until the 18th day of November, 1895. The agreement then provided that if on that day, or any time prior thereto, the said R. Finkel & Son or their assigns choose to redeem the said property by paying to Arnold Kohn or his assigns whatever sum of money he may have paid on or for said property, with interest up to date of such redemption, the said Kohn or his assigns should convey said property to said R. Finkel & Son or his assigns; "it being understood that said Arnold Kohn is to be paid sufficient so that no loss whatever will inure to him or his assigns by reason of such purchase; this to include all charges he may have paid for legal services rendered or to be rendered, interest on first mortgage, costs of action now pending to foreclose the same, and any charge for extension of said mortgage." It was also provided that "a further contract to carry out all the above is to be made after the purchase of said premises by said Arnold Kohn; and said contract is to contain a clause that time is the essence of the contract."

Considering the situation and relation of the parties, the object for which this contract was made, and the form adopted, it is, I think, apparent that the intent was to enable the plaintiffs to redeem this property from the sale about to take place, if they were able to pay the amount due upon the mortgage which had then been foreclosed, and that the confusion arose because of the practical identification of the defendant Kohn and the State Bank, of which he was an officer, and for which it was evident he was acting. The property was about to be sold under a foreclosure of the mortgage held by the State Bank, and it is evident that the Petchafts were not in a position to purchase the property at the sale. To protect the bank, it was necessary that the price for which the property was sold should be an amount equal to that due on its mortgage. The agreement contained no obligation of the plaintiffs or anybody else that Kohn or the State Bank should be repaid any amount that should be bid for the property at the sale. Kohn was to buy the property, and deed it to the plaintiffs, who had been procured by Petchaft for the evident purpose of enabling the Petchafts to again become the owners of the property upon paying the amount which it had cost Kohn or the State Bank. There could be no possible motive for Kohn to make such an agreement, except to give Petchaft an opportunity of redeeming the property; and it certainly could not be supposed that Kohn or the State Bank would make such an agreement, except

upon condition of Petchaft's paying the amount due upon the mort-
gage.  As before stated, Kohn had no interest in this property, no
interest in the mortgage, and no interest in either the plaintiffs or
Petchaft, except so far as he was an officer of the bank, interested
in procuring for it the amount of its mortgage.  While the agree-
ment, in the form in which it was drawn, failed clearly to express this
intention of the parties, it seems that the mistake arose because
of the practical identification of Kohn with the State Bank, and
the evident idea in the mind of the draftsman that that relation was
understood.  The provision that Kohn was "to be paid a sum suffi-
cient so that no loss whatever would inure to him or his assigns by
reason of such purchase" evidently contemplated that the State Bank
should be protected.  The contract, as executed, was informal, and
contemplated a final formal agreement for the sale in case the prop-
erty was bid in by Kohn.  The State Bank was the real party in
interest, and Kohn was its representative, and this was clearly under-
stood by all the parties.  If Kohn had bid at the foreclosure sale an
amount equal to the amount due on the mortgage, there would have
been no dispute as to the amount that the plaintiffs would be re-
quired to pay to entitle them to a conveyance; and the fact that he
bid a less sum, considering the fact that his sole action in the matter
was as an officer of the State Bank, and that his object was to protect
the bank's interest,—viewing the actual agreement that was made
in the light of the relation of the parties to the property that the
evidence disclosed,—would make no difference as to the amount that
the plaintiffs were bound to pay to entitle them to a conveyance of
the property.  Taking, therefore, this contract as it stands, viewing
it in the light of the circumstances that existed at the time it was
executed, and considering the evident object sought to be attained,
it would seem that the real intent was to allow Petchaft or the plain-
tiffs, as his appointees, an opportunity to redeem from the foreclosure
sale by paying the amount due upon the mortgage to the State Bank,
together with any additional expense that the State Bank or the de-
fendant should be subjected to in order to obtain a good title to the
property.  Turning to the evidence as to the actual agreement be-
tween the parties, this is clearly borne out by the testimony of the
defendant Kohn and of Mr. Lyon, his attorney.  Kohn testifies:
That Petchaft came to him, as vice president of the State Bank, and
stated that he (Petchaft) was very anxious to redeem his house in
Madison street, which was then about to be sold under foreclosure;
that he could not take the title to the house either in his own name
or that of his wife, but wanted to redeem the property and take it
in the name of Finkel, who was about to marry his daughter; that
he wanted to see that the bank was paid, "and that we could get every
cent that was due to us, and he wanted me to bid up even beyond the
amount that was due the bank.  I told him that I would not do that,
unless we had some security that he would redeem; and he said he
could not push Finkel for any more money, because he had already
loaned some, but that Finkel would give us his note to cover us for
any damage that we might sustain," and wanted Kohn to go to Lyon's
office on the day before the sale, and make some sort of an agreement.

That on that day Petchaft, Finkel, and Kohn went together to Mr. Lyon's office, and explained the matter to him; Lyon being at that time the attorney for the bank in foreclosing the mortgage. Kohn told Lyon that he was to draw an agreement by which Finkel, when he took the property, should pay the bank the entire indebtedness, and a statement of such indebtedness was then made up. This was said in the presence of Petchaft and Finkel, and then Mr. Lyon drew the agreement which is sought to be enforced. This testimony is corroborated by Mr. Lyon, who testified that in drawing up this agreement he intended to express the agreement which had been entered into between Petchaft and Kohn; that it was done in Pet-chaft's presence, and with his assent, and was then executed. That this was the agreement between the parties is clear. The note to be given by the plaintiffs for $500 was a rather clumsy way of providing for the repayment to Kohn of the expenses of the transaction in case Finkel should not redeem within the time fixed. The testimony of Finkel and Petchaft, while formally denying these allegations as to the actual agreement made, is most unsatisfactory. Except as to mere denials, they contradict each other at every material point. Finkel endeavors to make Petchaft his broker, engaged in procuring for him a cheap bargain, for which he was to receive a commission. This Petchaft denies. Finkel says that at the time he was not engaged to Petchaft's daughter, and did not contemplate becoming his son-in-law. Petchaft says that Finkel at the time was contemplating an engagement, and that their relation was understood. Finkel insists upon it that Kohn was the owner of the $10,000 mortgage, and that he (Kohn) owned the property and was selling it. But at that time the property was owned by Petchaft's wife, and it was perfectly understood that neither Kohn nor the State Bank had any interest in the first mortgage. Petchaft knew that Kohn was the vice president of the bank, was acting for it, and had dealings with him in that capacity. From the testimony it would seem clear that Finkel understood that he was to repay to Kohn what the latter should pay for the house, and that Kohn was to pay for the house the amount due to the State Bank, notwithstanding the evident endeavor of Finkel and Petchaft to gain an advantage over the defendants by reason of the loose way in which the agreement was drawn, and the fact that Kohn, at the auction sale, bid less than the amount due the State Bank.

We think that upon this testimony the referee might well have decreed the reformation of the agreement asked for by the defendants. The plaintiffs, however, have persistently refused, and still refuse, to recognize the plain agreement between the parties, or to pay the amount due to the State Bank upon the mortgage which had been foreclosed; repudiating their agreement to protect the defendants by paying to them the amount due upon the mortgage, as a condition for their right to a conveyance of the property. They did not ask upon the trial, nor do they ask upon this appeal, a right to a conveyance upon payment of this amount, which we think was clearly within the contemplation of the parties at the time the agreement was made. A specific performance of an agreement of this character is

addressed to the sound judicial discretion of the court. "Where, by reason of circumstances attending the making of the contract, such as fraud, accident, or mistake, or where, by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable, and produce results not within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable laches or inattention by the party resisting performance in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy." Gotthelf v. Stranahan, 138 N. Y. 345, 34 N. E. 286. "It is a well-established principle relating to this subject that specific performance will never be decreed where it would be inequitable. It is immaterial whether the fact that it is inequitable arises from the provisions of the contract, or from external facts or circumstances which affect the situation and relations of the parties; for in either case it may constitute a sufficient ground for a court of equity to withhold this peculiar relief, and to leave the parties to their legal remedy." Stokes v. Stokes, 155 N. Y. 581, 50 N. E. 342.

We think that in this case the judgment may well be affirmed upon the ground that to specifically perform this contract as claimed by the plaintiffs would be to violate the real object that was in the contemplation of the parties, and would produce a result not contemplated by any of them at the time of the execution of the agreement, and that the court, in the exercise of its judicial discretion, properly refused specifically to enforce it, leaving the plaintiffs to their remedy at law to recover any damage that they have sustained, if any valid contract with them has been broken by the defendants, or either of them. The plaintiffs were not entitled to a judgment requiring this note to be delivered up or canceled. It is not alleged that any attempt has been made by the defendants, or either of them, to enforce the note, or that the plaintiffs would not have an ample defense to the note if any such attempt was made.

Upon the whole case, we think that substantial justice has been done by the judgment, and that it should be affirmed, with costs. All concur.